# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 4:15-CV-275 CAS |
| v. | ) ) | |
| JOSE INES RUBALCAVA GONZALES, | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action by the United States of America ("United States") under Section 340(a) of the Immigration and Nationality Act, 8 U.S.C. § 1451(a), to revoke and set aside defendant Jose Ines Rubalcava Gonzales' ("Mr. Rubalcava") United States citizenship and cancel his certificate of naturalization. The matter is before the Court on the United States' motion for summary judgment. Defendant opposes the motion and it is fully briefed and ready for decision. For the following reasons, the motion will be granted.

## I. Background

Mr. Rubalcava was born in Mexico and moved to the United States in 1984 at approximately the age of nineteen. He became a lawful permanent resident of the United States in 1990. Mr. Rubalcava committed an act of child molestation in Missouri in April 2006, and in July 2007 applied for naturalization as a U.S. citizen. Mr. Rubalcava had a citizenship interview in February 2008 and became a naturalized U.S. citizen in June 2008. In November 2009, the State of Missouri criminally charged Mr. Rubalcava with multiple counts of sodomy and child molestation, and subsequently amended the charges. In July 2011, Mr. Rubalcava pleaded guilty to one count of class B felony

child molestation in the first degree and was sentenced to ten years in prison. Mr. Rubalcava served his prison term and was released.

The United States filed this action in 2015 seeking to set aside the order admitting Mr. Rubalcava to U.S. citizenship and cancel his Certificate of Naturalization on the grounds that he (1) illegally procured his U.S. citizenship because at the time of naturalization, he lacked good moral character, and (2) concealed and misrepresented a material fact in his naturalization application.

## II. Legal Standard

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). With this standard in mind, the Court finds the following facts for purposes of summary judgment.

**III. Facts**

1. Plaintiff, Jose Ines Rubalcava Gonzales ("Mr. Rubalcava"), was born in 1965, in San Jose de Los Reynoso, Jalisco, Mexico. Ex. J, Deposition Transcript of Mr. Jose Ines Rubalcava Gonzales, at 7-8.

2. Mr. Rubalcava moved to the United States in or about 1984. Ex. J, 8. He became a lawful permanent resident of the United States on December 1, 1990. Ex. H, Form N-400, Application for Naturalization, at 2.

3. In April 2006, Mr. Rubalcava committed an act of child molestation, specifically sexual contact with his stepdaughter, a nine-year-old child (hereinafter referred to as "C.L."). Ex. B, Judgment; Ex. G, Transcript of Plea Colloquy, at 8-9.

4. On November 20, 2009, the State of Missouri ("the State") filed an information charging Mr. Rubalcava with multiple counts of sodomy and child molestation. Ex. D, Information.

5. Mr. Rubalcava was arraigned on December 4, 2009, and entered a plea of not guilty to all of the charges. Ex. A, Docket Sheet, at 2.

6. The State filed a Second Amended Information on July 22, 2011, alleging two counts of child molestation and one count of attempted sodomy. Ex. C, Second Amended Information. Count I alleged that Mr. Rubalcava violated Mo. Rev. Stat. § 566.067 by committing a class B felony of child molestation in the first degree, in that on or about April 2006 in the County of Jasper, State of Missouri, the defendant subjected C-L-who was then less than fourteen years old to sexual contact. See id.

7. On July 22, 2011, Mr. Rubalcava pleaded guilty to Count I, Child Molestation in the First Degree, in violation of Mo. Rev. Stat. § 566.067, in that on or about April 2006 he subjected C-L-who was then less than fourteen years old to sexual contact. Ex. A, Docket Sheet, at 11; Ex. E,

3

Petition to Enter Plea of Guilty;2 Ex. F, Memorandum of Plea Bargain; Ex. G, Transcript of Plea Colloquy.

8. At his plea hearing, Mr. Rubalcava stated that he signed both the Petition to Enter Plea of Guilty and the Memorandum of Plea Bargain only after his attorney explained the documents to him and after an interpreter sight translated the documents from English into Spanish. Ex. G, at 6-7.

9. The State described the evidence that it would proffer if the case were to go to trial, including testimony from the victim that on or about April 2006 in Jasper County, Missouri, Mr. Rubalcava took the victim's hand and placed it upon his penis. At the time, the victim was less than 14 years old, and this occurred "just prior to her nine year old birthday." Mr. Rubalcava admitted at his guilty plea proceeding that this information was substantially correct. Ex. G, at 8-9.

10. On July 22, 2011, the Circuit County Court for Jasper County, Missouri, held a plea hearing, found factual basis for the plea, accepted the plea of guilty of the charge of a Class B Felony, Child Molestation, and found Mr. Rubalcava guilty. Ex. A, at 11.

11. On November 18, 2011, the court again accepted the plea agreement and found Mr. Rubalcava guilty of violating Mo. Rev. Stat. § 566.067, First Degree Child Molestation. The court sentenced Mr. Rubalcava to ten years in prison. Ex. A, at 12; Ex. B.

12. Mr. Rubalcava testified in his deposition in this case that he showed C.L. his penis and got her to touch it. Ex. J, at 36:20-25. He testified, however, that this occurred in January 2008, not in April 2006. Id., at 27:25-28:5; 29:7-30:8.

13. On July 26, 2007, Mr. Rubalcava filed a Form N-400, Application for Naturalization with the United States Citizenship and Immigration Services ("USCIS"), a subagency within the Department of Homeland Security. Ex. H.

14. Mr. Rubalcava's N-400 was filled out for him by Armando Salgado of Armando Salgado Tax Service and Notary Public, based on information provided by Mr. Rubalcava. Ex. H, at 10.

15. Part 10, Question 15 asked if Mr. Rubalcava had "ever committed a crime or offense for which [he was] **not** arrested." Mr. Rubalcava answered "No" to this question. Ex. H, at 8.

16. On February 27, 2008, USCIS Officer Angela Raabe (n/k/a Angela Firuccia) interviewed Mr. Rubalcava regarding his naturalization application to determine his eligibility for naturalization. At the beginning of the interview, Officer Raabe placed Mr. Rubalcava under oath. Ex. H, at 10.

17. At his naturalization interview, Mr. Rubalcava failed to disclose a crime for which he was later convicted: that he had sexually molested C. L., his nine-year-old stepdaughter, in April 2006. Ex. H, at 10.

18. At no point during the naturalization process did Mr. Rubalcava disclose his criminal act of child molestation. See generally, Ex. H.

19. Officer Raabe did not remember Mr. Rubalcava's interview, but testified she would have circled in red ink the questions on Mr. Rubalcava's Form N-400 that she asked him about during the interview on February 27, 2008.

20. Question 15, which asked whether Mr. Rubalcava had "ever committed a crime or offense for which [he was] not arrested," was not circled in red ink. Ex. H, at 8. Based on the fact that the question was not circled in red ink, Officer Raabe testified she did not ask Mr. Rubalcava about Question 15 at the interview. Def.'s Ex. 3, Firuccia Dep., 88:25-89:15.

21. At the naturalization interview, Mr. Rubalcava swore and certified under penalty of perjury that the contacts of his application for naturalization, including four corrections noted thereon by Officer Raabe, were true and correct to the best of his knowledge and belief. Ex. H, at 10.

22. At the time of his naturalization interview, Mr. Rubalcava could speak, read, and write in English. Ex. J, at 32-33.

23. Based on Mr. Rubalcava's testimony at his individual naturalization interview, Officer Raabe recommended that the court grant Mr. Rubalcava's petition for naturalization. Ex. H, at 1.

24. Officer Raabe testified that child molestation would not meet the standard of good moral character. Ex. K at 97:18-98:4.

25. On June 9, 2008, Mr. Rubalcava took the oath of allegiance to the United States, and the Department of Homeland Security admitted him to United States citizenship, issuing Mr. Rubalcava a Certificate of Naturalization No. 29390863. Ex. I, Certificate of Naturalization for Jose Ines Rubalcava Gonzales.

## IV. Discussion

### A. Legal Standards for Revocation

An action to denaturalize a citizen presents serious issues for both the defendant and the United States. See Fedorenko v. United States, 449 U.S. 490, 507 (1981). The Supreme Court has stated that the right to acquire United States citizenship is a precious one, and once citizenship is acquired its loss can have "severe and unsettling consequences." Id. at 505. At the same time, "a prospective citizen must strictly comply with 'all the congressionally imposed prerequisites to the acquisition of citizenship.'" United States v. Negele, 222 F.3d 443, 447 (8th Cir. 2000) (quoting Fedorenko, 449 U.S. at 506). "Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." Fedorenko, 449 U.S. at 506 (citing 8 U.S.C. § 1451).

The United States "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." Fedorenko, 449 U.S. at 505 (quoted case omitted). To prevail in a

proceeding to revoke naturalization, the United States must prove its case by evidence that is "clear, unequivocal, and convincing" and "not leave the issue in doubt." Id. (quoted case omitted). Section 340(a) of the Immigration and Naturalization Act provides in pertinent part:

> It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization *were illegally procured or were procured by concealment of a material fact or by willful misrepresentation*.

8 U.S.C. § 1451(a) (emphasis added).

Naturalization is considered to be "illegally procured" when the person was statutorily ineligible for naturalization. Fedorenko, 449 U.S. at 506. An important statutory requirement of eligibility for naturalization is that the person be of "good moral character." 8 U.S.C. § 1427(a)(3). The statute establishes a required period of moral character beginning five years prior to filing the application for naturalization, and continuing until the applicant takes the oath of citizenship and becomes a United States citizen.[1] Id.; see also 8 C.F.R. § 316.10(a)(1). United States immigration laws specify certain actions or characteristics that preclude persons from establishing good moral character, see 8 U.S.C. § 1101(f)(1)-(9), but the fact that a person does not fit within any one of the specified categories "shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). The determination of good moral character must be made "on a case-by-case basis taking into account the elements enumerated in [8 C.F.R. § 316.10] and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

---

[1] In this case, Mr. Rubalcava filed his application for naturalization on July 26, 2007, and took the oath of allegiance on June 9, 2008. As a result, the statutory period during which Mr. Rubalcava was required to be a person of good moral character began on July 26, 2002, and continued until June 9, 2008.

In addition, an applicant for naturalization lacks good moral character and is ineligible for naturalization if he is convicted of or admits the commission of one or more crimes involving moral turpitude during the statutory period, even if the person was never charged, arrested or convicted. 8 C.F.R. § 316.10(b)(2)(iv).

Naturalization may also be revoked if it was procured by concealment of facts or misrepresentations "that are both willful and material." 8 U.S.C. § 1451(a); Kungys v. United States, 485 U.S. 759, 767 (1988). The statute contains four separate requirements: (1) "the naturalized citizen must have misrepresented or concealed some fact," (2) "the misrepresentation or concealment must have been willful," (3) "the fact must have been material," and (4) "the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." Id. A concealment or misrepresentation is "material" if it "had a natural tendency to influence the decisions of the Immigration and Naturalization Service." Id. at 772. The United States need not prove that "but for" the misrepresentation or concealment, the applicant would not have been approved for citizenship. Id. at 776-77. A person who obtained citizenship in a proceeding where he made a material misrepresentation is presumably disqualified, and the presumption may be refuted only by proof the applicant actually met all statutory requirements. Id. at 777.

B. Grounds For Revoking Naturalization

The United States contends that Mr. Rubalcava's naturalization should be revoked because (1) it was illegally procured, and (2) it was procured by means of misrepresentations and concealment. The Court will discuss each separately.

1. *Illegal Procurement*

The United States contends that Mr. Rubalcava lacked the good moral character required for naturalization because he admits to committing an aggravated felony that is a crime of moral turpitude,[2] and that is not considered moral by the standards of the average citizen in the community.

An applicant who commits any crime of moral turpitude during the statutory period, for which he is later convicted, is barred from naturalization. 8 C.F.R. § 316.10(b)(2)(i). Mr. Rubalcava committed the crime for which he was sentenced to a ten-year prison term in April 2006, during the statutory period for determining good moral character. As a result, the United States is entitled to judgment revoking Mr. Rubalcava's naturalization if his sexual assault of his stepdaughter constitutes a crime of moral turpitude.

Federal immigration law does not define the term "moral turpitude." Whether a crime involves moral turpitude depends upon the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular incident. Pichardo v. I.N.S., 104 F.3d 756, 759 (5th Cir.1997).

> Moral turpitude refers generally to conduct that shocks the conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

Id. at 760 (quoted case omitted).

---

[2]Under United States immigration law, the definition of "aggravated felony" includes sexual abuse of a minor. 8 U.S.C. § 1101(a)(43)(A).

9

In this case, Mr. Rubalcava was convicted of violating Section 566.067 of the Missouri Revised Statutes (2000), which states that "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Mo. Rev. Stat. § 566.067. Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Mo. Rev. Stat. § 566.010(3).

The United States Supreme Court has characterized sexual abuse of a minor as an "act repugnant to the moral instincts of a decent people." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244 (2002); see also Judulang v. Holder, __ U.S. __, 132 S. Ct. 476, 482 (2011) (noting that "first-degree sexual abuse of a child . . . is a 'crime involving moral turpitude . . . .'" (citing 8 U.S.C. § 1182(a)(2)(A)(i)(I))). The Board of Immigration Appeals ("BIA") routinely holds that sexual assault or abuse of a minor is a crime involving moral turpitude. See, e.g., Matter of Dingena, 11 I. & N. Dec. 723 (BIA 1966) ("as long as sexual intercourse with a child constitutes a crime under the law of the state, we conclude on the basis of precedent administrative and judicial decisions, that moral turpitude is involved"); In re: Romeo Arnulfo Larin Palacios a.k.a. Romeo Arnulfo Larin, 2004 WL 1059729 (BIA 2004) (unpublished opinion) (citing several BIA opinions finding that sexual assault on a minor was a crime of moral turpitude).

The Eighth Circuit has held that crimes involving the sexual assault of children are crimes involving moral turpitude. See Solano-Chicas v Gonzales, 440 F.3d 1050, 1055-56 (8th Cir. 2006) (BIA did not err in finding Fifth Degree Assault charge based on "sexual actions against a 10-year old girl" to be a crime of moral turpitude); Mendez-Morales v. I.N.S., 119 F.3d 738, 738-39 (8th Cir. 1997) (first-degree sexual assault of a thirteen-year old victim was a crime involving moral

10

turpitude). Other circuits have made similar findings. See Mehboob v. Attorney General of United States, 549 F.3d 272, 277 (3d Cir. 2008) ("Strict liability morality offenses, like indecent assault under § 3126(a)(8), are crimes involving moral turpitude because of the community consensus that such offenses, which are enacted for the protection of the child, are inherently antisocial and depraved."); Gonzalez-Alvarado v. I.N.S., 39 F.3d 245, 246 (9th Cir. 1994) (incest is a crime involving moral turpitude); Castle v. I.N.S., 541 F.2d 1064, 1066 (4th Cir. 1976) ("Maryland statutory offense of carnal knowledge of a female between the ages of fourteen and sixteen years manifestly involves moral turpitude." (internal citations omitted)); Marinelli v. Ryan, 285 F.2d 474, 475-76 (2d Cir. 1961) ("The charge against a man of mature years of touching a boy under sixteen with sexual intent was a charge of crime involving 'moral turpitude' as the term is generally understood."). District courts in denaturalization cases have held that sexual abuse of a minor constitutes a crime of moral turpitude. See, e.g., United States v. Gayle, 996 F.Supp.2d 42 (D. Conn. 2014) (sexual assault involving sexual intercourse with a child under the age of thirteen was a crime of moral turpitude); United States v. Okeke, 671 F.Supp.2d 744, 750 (D. Md. 2009) (sexual molestation of eleven-year old girl by touching her breast and genitalia was crime of moral turpitude); United States v. Ekpin, 214 F.Supp.2d 707, 714 (S.D. Tex. 2002) (defendant's sexual abuse of his daughter, involving digital penetration and sucking her breasts while both were naked and against her will was a crime of moral turpitude).

Here, the Court finds that Mr. Rubalcava's conviction for First Degree Child Molestation, which involved the sexual contact of having his nine-year-old stepdaughter touch his penis, for the purpose of arousing or gratifying sexual desire of any person, is a base and depraved crime that violates the standards of the average citizen in the community and is a crime of moral turpitude. As a result, the United States is entitled to judgment revoking Mr. Rubalcava's naturalization.

*ii. Willful and Material Misrepresentations and Concealment*

The United States also contends that a second and independent ground exists for the revocation of Mr. Rubalcava's citizenship based on his concealment of material facts and willful misrepresentations during the naturalization process: specifically, that he had not committed a crime for which he had not been arrested.

A court may revoke a person's naturalization if it was "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The Supreme Court has interpreted this statute to contain four separate requirements: (1) "the naturalized citizen must have misrepresented or concealed some fact," (2) "the misrepresentation or concealment must have been willful," (3) "the fact must have been material," and (4) "the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. Kungys, 485 U.S. at 767.

a. Misrepresentation or Concealment of a Fact

First, the United States must prove that Mr. Rubalcava misrepresented or concealed a fact during the naturalization process. The evidence shows that Mr. Rubalcava admitted to sexually molesting his minor stepdaughter in April 2006, well prior to July 22, 2007, the date on which he submitted his Application for Naturalization Form N-400. As a result, when Mr. Rubalcava answered "no" to Question 15 of the N-400, which asked, "Have you ever committed a crime or offense for which you were **not** arrested?," this was a perjurious misrepresentation and concealment of a criminal act. Mr. Rubalcava made a similar misrepresentation at the conclusion of his naturalization interview with Officer Raabe on February 27, 2008, when he affirmed under penalty of perjury that the contents of his N-400 were all true and correct.

The questions asked of Mr. Rubalcava during the application process, including the written application, constitute sufficient evidence to show that he misrepresented and concealed the sexual molestation of his stepdaughter.

b. Willfulness of the Misrepresentation or Concealment

Second, the United States must prove that Mr. Rubalcava's misrepresentation or concealment was willful. The "element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary." Toribio-Chavez v. Holder, 611 F.3d 57, 63 (1st Cir. 2010) (citing Mwongera v. I.N.S., 187 F.3d 323, 330 (3d Cir. 1999); Parlak v. Holder, 578 F.3d 457, 463–64 (6th Cir. 2009)). "An intent to deceive is not necessary; rather, knowledge of the falsity is sufficient." Id. (citing Forbes v. I.N.S., 48 F.3d 439, 442 (9th Cir. 1995); Mwongera, 187 F.3d at 330; Parlak, 578 F.3d at 463).

The evidence in this case meets this standard. The naturalization application asks whether Mr. Rubalcava had "ever committed a crime or offense for which [he was] **not** arrested." This question is straightforward and unambiguous, and designed to elicit precisely the type of criminal conduct that Mr. Rubalcava concealed. In response to this question, Mr. Rubalcava checked the box indicating that he had not committed any such acts, despite the fact that he had molested his nine-year-old step-daughter in April 2006. Mr. Rubalcava certified under penalty of perjury that the application was true and correct on July 22, 2007, and again swore under penalty of perjury that the contents of the application for naturalization was true and correct on February 27, 2008.

Mr. Rubalcava admits that he could speak, read and write in English at the time of his interview, and was assisted in the preparation of his N-400 by another person. Question 15 is simple and easily understood. Mr. Rubalcava cannot claim he did not know how to answer this question, as he testified in his deposition that he knew molesting C.L. was "wrong." Ex. J, at 19, 22. Further,

13

although Mr. Rubalcava claimed he did not know that child molestation was a felony, id. at 18, he admitted that it was a crime to sexually molest a child in Mexico. Id. at 21. Therefore, Mr. Rubalcava willfully misrepresented a material fact in his naturalization application, where he knew his conduct was criminal.

Mr. Rubalcava now asserts that he did not commit the crime of child molestation before he applied for naturalization, and therefore did not conceal his criminal history during the naturalization process. He testified in his deposition that the criminal act actually occurred in January 2008, some months after he filled out the Form N-400. Mr. Rubalcava, however, pleaded guilty to the crime of Child Molestation in the First Degree based on acts committed on or about April 2006. By contesting the date on which the crime occurred, Mr. Rubalcava is attempting to improperly collaterally attack his criminal conviction and sentence, which was not appealed or overturned.

"A guilty plea may be used in a subsequent civil action as evidence of the crimes committed." Reed v. City of St. Charles, 2007 WL 1656266, at *5, n.7 (E.D. Mo. June 6, 2007), aff'd, 561 F.3d 788 (8th Cir. 2009). The Eighth Circuit has held repeatedly that a person cannot collaterally attack a criminal conviction in his immigration case. See Hassan v. Holder, 446 F. App'x 822, 823 (8th Cir. 2012) (unpublished per curiam) (citing Paredes v. Attorney Gen. of United States, 528 F.3d 196, 198-99 (3d Cir. 2008), and Gouveia v. I.N.S., 980 F.2d 814, 817 (1st Cir. 1992)); Estrada-Dominguez v. Gonzales, 217 F. App'x 591-92 (8th Cir. 2007) (unpublished per curiam); Izedonmwen v. I.N.S., 37 F.3d 416, 417 n.3 (8th Cir. 1994) (citing Gouveia, 980 F.2d at 817). Other circuits hold similarly. See Ramirez-Villalpando v. Holder, 645 F.3d 1035, 1041 (9th Cir. 2011) (petitioner may not collaterally attack his state court conviction on a petition for review of a BIA decision.); United States v Jean-Baptiste, 395 F.3d 1190, 1194 (11th Cir. 2005) ("Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in a

subsequent civil action with respect to issues necessarily decided in the criminal trial."); Marte-Mata v. I.N.S., 37 F.3d 1499 (6th Cir. 1994) (Table) (criminal conviction cannot be collaterally attacked in deportation proceedings); Guillen-Garcia v. I.N.S., 999 F.2d 199 (7th Cir. 1993) (same); Trench v. I.N.S., 783 F.2d 181, 184 (10th Cir. 1986) (same). The Court therefore finds that Mr. Rubalcava cannot raise a fact dispute concerning the date he sexually molested his stepdaughter in opposing the United States' motion for summary judgment.

Moreover, even if Mr. Rubalcava could raise a dispute about the timing of his criminal conduct, it would not be material to this case. As previously stated, Mr. Rubalcava pleaded guilty to the crime of Child Molestation in the First Degree based on acts committed in April 2006. To the extent Mr. Rubalcava now asserts that he molested C.L. in January 2008 rather than April 2006, the Court notes the January 2008 date was shortly before the February 27, 2008 interview at the United States Citizenship and Immigration Services. At that interview, Mr. Rubalcava swore under penalty of perjury that the contents of his application for naturalization were true and correct on February 27, 2008. So even if Mr. Rubalcava molested C.L. in January 2008, he made a perjurious statement at the interview. Thus, any "time frame" argument is unpersuasive and does not raise an issue that could preclude summary judgment. See Villanueva v. City of Scottsbluff, 779 F.3d 507, 510 (8th Cir. 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.")).

Based on the undisputed facts, the Court finds that Mr. Rubalcava willfully concealed his criminal history on his Form N-400 application.

c. <u>Materiality of the Misrepresentation or Concealment</u>

Third, the United States must prove the misrepresentation or concealment was material. The general rule is that a concealment or misrepresentation is material if it "has a tendency to influence or was capable of influencing, the decision of the decision making body to which it was addressed." <u>Kungys</u>, 485 U.S. at 770. A misrepresentation or concealment is material to an alien's application for naturalization if it "had a natural tendency to produce the conclusion that the applicant was qualified," and thus to influence the decision of the INS. <u>Id.</u> at 772. The test must be met by "evidence that is clear, unequivocal, and convincing." <u>Id.</u> at 773. Nonetheless, the United States need not prove that "but for" the misrepresentation or concealment, the applicant would not have been approved for citizenship. <u>Id.</u> at 776-77. A person who obtained citizenship in a proceeding where he made a material misrepresentation is presumably disqualified, and the presumption may be refuted only by proof the applicant actually met all statutory requirements. <u>Id.</u> at 777. The issue of materiality is an issue of law for the Court. <u>Id.</u> at 772.

Mr. Rubalcava's failure to disclose the fact that he molested his minor stepdaughter during the statutory period meets the materiality standard, because if he had disclosed this criminal act he could not have demonstrated good moral character, and therefore did not meet the statutory requirements and was ineligible for naturalization. <u>See</u> 8 C.F.R. § 316.10(b)(3)(iii). USCIS Officer Raabe testified that the act of child molestation was inconsistent with good moral character.[3] The

---

[3]Mr. Rubalcava does not raise a genuine issue of fact as to whether Officer Raabe might not have rejected his application for naturalization if he had disclosed the act of child molestation. Mr. Rubalcava claims Officer Raabe "admitted that even if she knew that Defendant allowed his step daughter to touch his penis in April 2006, she still might have granted his naturalization application." Def.'s Statement of Genuine Issues of Material Fact (Doc. 28) at 2, ¶ 18. This assertion mischaracterizes Officer Raabe's deposition testimony in response to the hypothetical question, "[I]f an applicant would have told you in response to Question No. 15 that sometime during the statutory period his stepdaughter of 12 years asked him a sex ed question and in

16

Court finds that Mr. Rubalcava's concealment and failure to reveal the fact that he molested his stepdaughter was material under the Kungys standard.

### d. Procurement of Citizenship as a Result

Finally, the United States must prove that Mr. Rubalcava procured his citizenship as a result of his concealment. As stated above, to satisfy the fourth part of the test, the United States need not establish that "but for" the misrepresentation, the alien would not have achieved naturalization. Kungys, 485 U.S. at 776. Instead, the United States' showing of "materiality" creates a presumption that Mr. Rubalcava was disqualified from naturalization: "Though the 'procured by' language of the present statute cannot be read to *require* proof of disqualification, we think it can be read to express the notion that one who obtained his citizenship in a proceeding where he made material misrepresentations was *presumably* disqualified." Id. at 777 (emphases in original). The Supreme Court continued, however,

---

answering he decides to pull his pants down and show her his penis and let her touch it, what would you do with that applicant? Would you deny their application?" Officer Raabe answered that she did not know, as the question was "completely speculative," but when pressed stated she would have to get more information to make a decision, take a sworn statement from the applicant to obtain more information, and run the information by her supervisor or legal counsel for guidance as to whether it would affect the applicant's good moral character; but that it was possible the facts *as given* would not be a permanent bar to citizenship because the person was not convicted. (Firuccia Dep., Def.'s Ex. 3, at 75:19-77:24.)

The hypothetical question put to Officer Raabe does not raise an issue of fact because it was not based on the facts of Mr. Rubalcava's criminal act as reflected in the transcript of his guilty plea proceedings. The hypothetical question involved a child of twelve rather than nine (although Mr. Rubalcava's Statement of Fact No. 18 concedes the April 2006 date, when C.L. was nine), and more importantly omits the element from the statute to which Mr. Rubalcava pleaded guilty that the sexual contact was made "for the purpose of arousing or gratifying sexual desire of any person." Mo. Rev. Stat. §§ 566.067, 566.010(3). When specifically asked whether child molestation – the crime to which Mr. Rubalcava pleaded guilty and was sentenced to ten years in prison – met the definition of good moral character, Office Raabe answered that it did not. (Firuccia Dep., Gov't Ex. K at 97:18-98:4.) And of course, Mr. Rubalcava was ultimately convicted of first degree child molestation, unlike the facts of the hypothetical question.

17

> The importance of the rights at issue leads us to conclude that the naturalized citizen should be able to refute that presumption, and avoid the consequence of denaturalization, by showing, through a preponderance of the evidence, that the statutory requirement as to which the misrepresentation *had a natural tendency* to produce a favorable decision was in fact met.

Id. at 777 (emphasis in original). "Thus, for the fourth Kungys requirement, once the government establishes 'materiality,' a presumption arises against—and the burden of persuasion shifts to—the subject of the denaturalization proceeding regarding whether he or she is statutorily 'disqualified.'" Monter v. Gonzales, 430 F.3d 546, 554 (2d Cir. 2005). "That person may refute the presumption by establishing that he or she did in fact meet the statutory qualification that the misrepresentation had a tendency to influence." Id. at 554-55.

Here, the necessary statutory qualification is good moral character. Mr. Rubalcava has not carried his burden of persuasion that he did in fact have good moral character despite having committed a crime of moral turpitude and that he would have been granted citizenship if he had answered Question 15 honestly.

As a result, the Court concludes revocation of Mr. Rubalcava's citizenship is also warranted on the grounds that it was procured through his concealment of a material fact or willful misrepresentation.

## V. Conclusion

For the foregoing reasons, the United States' motion for summary judgment will be granted, and defendant Jose Ines Rubalcava Gonzales' United States citizenship will be revoked.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff United States of America's motion for summary judgment is **GRANTED**. [Doc. 23]

**IT IS FURTHER ORDERED** that the naturalization order of this Court entered June 9, 2008, granting United States citizenship to Jose Ines Rubalcava Gonzales, is **REVOKED** and **SET ASIDE**, and that Certificate of Naturalization No. 29390863 is **CANCELLED**.

**IT IS FURTHER ORDERED** that Jose Ines Rubalcava Gonzales is forever restrained and enjoined from claiming any rights, privileges, or advantages under any document that evidences the United States citizenship he obtained as a result of his June 9, 2008 naturalization.

**IT IS FURTHER ORDERED** that by **April 22, 2016**, Jose Ines Rubalcava Gonzales shall **SURRENDER** and deliver Certificate of Naturalization No. 29390863 and any copies thereof in his possession – and make good faith efforts to recover and immediately surrender any copies thereof that he knows are in the possession of others – to the United States Attorney General, or her designated representative, including counsel for the United States in this matter.

**IT IS FURTHER ORDERED** that by **April 22, 2016**, Jose Ines Rubalcava Gonzales shall surrender and deliver any other indicia of United States citizenship (including, but not limited to, United States passports, voter registration cards, and other voting documents) and any copies thereof in his possession – and make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others – to the United States Attorney General, or her designated representative, including counsel for the United States in this matter.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall send a certified copy of this Memorandum and Order and the accompanying Judgment to the United States Attorney General. 8 U.S.C. § 1451(f).

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  12th  day of April, 2016.